UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MATTHEW D. BJELOBRK and JAY VERONKO,

            Plaintiffs,

v.

SUFFOLK COUNTY,

           Defendant.

**MEMORANDUM & ORDER**
23-CV-08811 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiffs Matthew Bjelobrk and Jay Veronko, two former servicemembers and Suffolk County Police Department ("SCPD") officers, sued several Defendants, of which only Suffolk County remains in this action. *See Bjelobrk v. Suffolk Cnty.*, No. 23-cv-08811, 2025 WL 711791, at *5 (E.D.N.Y. Mar. 5, 2025). They allege that, during their employment with the SCPD, they were discriminated and retaliated against in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). The Court previously granted in part and denied in part Defendants' motion to dismiss. *See id.* at *16. As relevant here, the Court dismissed all of Veronko's claims of discrimination and retaliation under USERRA. *See id.* at *5–7. He now seeks reconsideration of the Court's dismissal of his retaliation claim. For the reasons explained below, his motion is GRANTED, but upon reconsideration, Defendant's motion to dismiss that claim is also GRANTED.

## BACKGROUND

The Court "recite[s] the substance of the allegations as if they represent[] true facts, with the understanding that these are not findings of the [C]ourt, as [I] have no way of knowing at this stage what are the true facts." *In re Hain Celestial Grp., Inc. Sec. Litig.*, 20 F.4th 131, 133 (2d

Cir. 2021).[1]  For the narrow purpose of this motion, the Court recites only those allegations concerning Veronko.

Veronko joined the U.S. Army in 1985 and performed four years of active duty service. ECF No. 1 ("Compl.") ¶ 77.  That was followed by 14 years of service in the New York National Guard, five years in the U.S. Army Reserve, and nine years in the U.S. Navy Reserve. *Id.*  His service included foreign deployments. *Id.* ¶¶ 79–80.  He retired from the Navy Reserve in 2017. *Id.* ¶ 77.  In January 2017, he joined the New York State Naval Militia, which he served in through January 2021. *Id.* ¶ 78.

Veronko joined the SCPD in 1993. *Id.* ¶ 82.  On June 6, 2018, he settled a lawsuit against Suffolk County and the SCPD and released his "past claims" against them. *Id.* ¶ 83 (emphasis omitted).  As such, he states that this lawsuit "addresses allegations and claims occurring on or after June 7, 2018." *Id.* ¶ 84 (emphasis omitted).  From June 7, 2018, through his ultimate retirement from the SCPD on January 10, 2021, he worked as an SCPD "Patrol Supervisor."[2] *Id.* ¶ 85.  On May 1, 2020, he filed a complaint with the U.S. Department of Labor alleging discrimination under USERRA based on his military service (the "DOL Complaint"). *Id.* ¶ 86.

Between June 7, 2018, and his retirement, "[s]uperiors at the SCPD repeatedly told [him] . . . that [he] would never be transferred or promoted from Patrol Sergeant because of [his] past USERRA lawsuit" and "because of [his] . . . DOL Complaint." *Id.* ¶¶ 87–88.  He also alleges that his supervisors created a hostile work environment for him based on the lawsuit and

---

[1]  Unless otherwise indicated, when quoting cases and the parties' papers, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

[2]  Based on subsequent allegations, it appears that his title was "Patrol Sergeant." *See, e.g.*, Compl. ¶¶ 87–89.

DOL Complaint. *Id.* ¶¶ 90–91. In April 2018 and February 2020, Veronko requested a transfer into the SCPD's Aviation Unit. *Id.* ¶ 93. For context, he had previously graduated from the U.S. Army Flight School, where he became a helicopter pilot. *Id.* ¶ 81. He maintained his flight license and eligibility to fly at all times relevant to this suit. *Id.* His requests to transfer into Aviation were denied, and he claims that it was in retaliation for his past lawsuit and the DOL Complaint. *Id.* ¶¶ 94–95. Had he received that transfer to Aviation, he would have earned more compensation. *Id.* ¶ 97. Veronko further alleges that he would have earned more in his final years at the SCPD, but that the SCPD "intentionally[,] continuously[,] and repeatedly den[ied] his requests for overtime and tour changes in retaliation for his military service and USERRA complaints." *Id.* ¶ 98.

During his time with the SCPD, Veronko "sought audiences" with high-ranking members of the SCPD "to end the retaliation and/or discrimination complained of," but they declined to meet with him. *Id.* ¶ 105. He was also denied access to information under the "Freedom of Information Law." *Id.* ¶ 106. He says that had he not been retaliated and discriminated against, he "would not have retired in 2020" and would have earned more income and a larger pension. *Id.* ¶ 108.

Veronko alleges that Defendant violated both USERRA's anti-discrimination (Count III) and anti-retaliation (Count IV) provisions. *See id.* ¶¶ 118–21. As the Court previously explained at the initial motion to dismiss stage, his discrimination claim turned exclusively on his membership in the New York State Naval Militia. *See Bjelobrk*, 2025 WL 711791, at *6. However, because that state service was not protected by USERRA, he failed to state a claim. *See id.* at *6–7. As discussed more fully below, the Court then dismissed both Count III and Count IV. *See id.* at *7. Two days later, Veronko sought leave to move for reconsideration. *See*

3

ECF No. 36.  He made clear that he "does *not* ask the Court to re-address the militia/USERRA ruling"; rather, he asked the Court to "reconsider the dismissal of Count [IV]," arguing that coverage for his state militia service was irrelevant to the viability of a USERRA retaliation claim.  *See id.* at 1–2 (emphasis in original).  The Court granted leave to file a motion for reconsideration and set a briefing schedule for it.  *See* Mar. 7, 2025, Text Order.  Veronko filed his motion on March 18, 2025.  *See* ECF No. 37.  Like his initial Opposition, it contained no request to amend.  *See Bjelobrk*, 2025 WL 711791, at *4.  Defendant's Opposition followed on April 3, 2025.  *See* ECF No. 39.

## LEGAL STANDARD

Local Civil Rule 6.3 requires a party moving for reconsideration to "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked."  Under the rule, "[t]he standard for granting a motion for reconsideration is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *See Johnson v. Cnty. of Nassau*, 82 F. Supp. 3d 533, 535–36 (E.D.N.Y. 2015) (quoting *Shrader v. CSX Transp.*, 70 F.3d 255, 257 (2d Cir. 1995)).  "[A] motion for reconsideration is not a vehicle for presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple."  *See Davidson v. Scully*, 172 F. Supp. 2d 458, 464 (S.D.N.Y. 2001).  In other words, "a party may not advance new facts, issues or arguments not previously presented to the court."  *See Mina Inv. Holdings Ltd. v. Lefkowitz*, 184 F.R.D. 245, 250 (S.D.N.Y. 1999).

"In order to survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99

(2d Cir. 2024) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausibly alleged 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matzell v. Annucci*, 64 F.4th 425, 433 (2d Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In making this assessment, the court must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *VR Glob. Partners, L.P. v. Petróleos de Venezuela, S.A.*, No. 24-1176-cv, 2024 WL 4891271, at *2 (2d Cir. Nov. 26, 2024).

## DISCUSSION

The Court begins with a brief discussion of the reconsideration posture of this case and proceeds to its analysis of Count IV under Rule 12(b)(6).

   A.  *Reconsideration*

This is the exceptional case in which reconsideration is warranted. Fundamentally, Veronko is correct in arguing that coverage under USERRA is not relevant for his ability to sustain a retaliation claim. *See* ECF No. 37 at 6. The statute's anti-retaliation provision plainly applies "regardless of whether th[e] person [alleging retaliation] has performed service in the uniformed services." 38 U.S.C. § 4311(b). To be sure, it is unfortunate that Veronko failed to initially make that argument in opposition to the motion to dismiss, *see* ECF No. 23 at 11, and thus effectively conceded Defendant's argument that the USERRA coverage issue was fatal to both of Veronko's claims, *see* ECF No. 22-6 at 16. And it is troubling that, even now, Veronko fails to cite in his motion the relevant statutory language just discussed. *See generally* ECF No. 37. Nevertheless, a proper application of the statute's plain text would not have permitted the dismissal of his retaliation claim based solely on his failure to allege qualifying military

service.  Against that backdrop, the Court finds that it is appropriate to exercise its discretion to reconsider the basis on which it dismissed Count IV.  *See Shrader*, 70 F.3d at 256–57.

In Opposition, Defendant claims that there are two procedural defects with the instant motion.  First, it argues that the Court's prior decision was not a final judgment and is therefore not subject to reconsideration.  *See* ECF No. 39 at 5–6.  To be sure, the Court's prior Order granting in part and denying in part the motion to dismiss was not a "judgment" [3] subject to reconsideration under Rule 59(e) or Rule 60(b).  *See McGraw-Hill Glob. Educ. Holdings, LLC v. Marthrani*, 293 F. Supp. 3d 394, 396–97 (S.D.N.Y. 2018) (Rule 59(e)); *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-cv-1360, 2023 WL 5179620, at *3 (E.D.N.Y. Aug. 11, 2023) (Rule 60(b)).  However, Local Civil Rule 6.3, although not specifically invoked by Veronko, permits a party to move for reconsideration of an interlocutory order like the Court's prior one.  *See Williams v. Cnty. of Nassau*, 779 F. Supp. 2d 276, 279–80 (E.D.N.Y. 2011).

Defendant therefore makes a second argument that the instant motion was not made in conformity with Local Rule 6.3, which requires that "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged," arguing that Veronko did not initially move by notice of motion.  *See* ECF No. 39 at 6.  That is fair enough, but the Court will not, in this case, exercise its discretion to deny the motion on that technical basis given that the motion is substantively meritorious, as just explained.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."); *Fiedler v.*

---

[3]   This is so because, even though the prior Order dismissed all of Veronko's claims, the Court did not direct the entry of partial judgment with respect to his claims under Rule 54(b). *See Ashmore v. CGI Grp., Inc.*, 860 F.3d 80, 86 n.6 (2d Cir. 2017).

6

*Incandela*, 222 F. Supp. 3d 141, 156 (E.D.N.Y. 2016) (explaining the "strong preference for resolving disputes on the merits, rather than on the basis of procedural issues").

Finally, Defendant suggests that there is a substantive problem barring reconsideration. Its argument is not the clearest, but as the Court understands it, Defendant suggests that Veronko seeks to use the instant motion to improperly relitigate an already decided issue—*i.e.*, the elements of a retaliation claim, including causation. *See* ECF No. 39 at 6–9. Contrary to Defendant's claim, though, the Court clearly did not previously address those elements; rather, it concluded that both of his causes of action failed due to a lack of coverage under USERRA. *See Bjelobrk*, 2025 WL 711791, at *7. Thus, this is not the case where a party improperly seeks to use reconsideration to present arguments already rejected, and reconsideration is proper.

### B. USERRA Retaliation

Even though the Court grants the motion for reconsideration, a second look ultimately does not save Veronko's retaliation claim, which cannot withstand scrutiny under Rule 12(b)(6). The Court previously described the requirements of a USERRA retaliation claim. *See id.* at *10. The statute bars an employer from "tak[ing] any adverse employment action or other retaliatory action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter." 38 U.S.C. § 4311(b). To make out a *prima facie* case of retaliation under USERRA, "a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 537 (S.D.N.Y. 2017). More specifically, a servicemember claiming retaliation under Section 4311(b) must show that he suffered a "materially adverse" employment action "such as termination, demotion

accompanied by a loss of pay, or a material loss of benefits or responsibilities that significantly alters the terms [or] conditions of his employment." *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 892 (7th Cir. 2011); *see Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 370 (W.D.N.Y. 2014). He also "must demonstrate that [his] exercise of [his] USERRA rights was a motivating factor in [the defendant's] action, unless [the defendant] can prove that the action would have been taken in the absence of [the plaintiff's] USERRA complaints." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006); *see also Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011) (same); *Croft*, 35 F. Supp. 3d at 377–78 (same).

At the motion to dismiss stage, Defendant argued that Veronko failed to plausibly allege the third and fourth elements of the *prima facie* case—*i.e.*, a materially adverse employment action and causation. *See* ECF No. 22-6 at 17–18. In large part, the Court agrees. Notably, Veronko did not meaningfully engage with these arguments in his initial Opposition, essentially asserting that "[t]he Complaint alleges specific transfer applications his employer denied because of retaliation for his prior USERRA complaints, specifically claims that Defendants denied him overtime because of his prior USERRA complaints and that Defendants denied tour-changes [*sic*] because of his prior USERRA complaints." ECF No. 23 at 11. But merely using the word "specific" in characterizing the Complaint does not "nudge[] [his] claim[] across the line from conceivable to plausible," as he is required to do. *Twombly*, 550 U.S. at 570. Although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Count IV fails that test.

As just mentioned, Veronko says that he was retaliated against in the form of the two failed transfer requests to Aviation (in April 2018 and January 2020) and denied overtime and

tour changes. Compl. ¶¶ 94, 99.[4]  His own pleading states that only the second failed transfer request to Aviation is within the scope of this suit. *Id.* ¶ 84.  And that transfer request in January 2020 came several months before he filed the DOL Complaint on May 1, 2020, *id.* ¶ 86, rendering it impossible (contrary to his pleading, *see id.* ¶ 95), that he was retaliated against because of it.  *See Hansen*, 2025 WL 588119, at *6.  So the only basis for retaliation that remains is his prior USERRA lawsuit, which he settled on June 6, 2018.  Compl. ¶ 83.  His claim fails because he fails to plead any causal connection between that lawsuit's settlement and the denial of the transfer to Aviation one and a half years later[5]; rather, he just asserts in a conclusory manner that he was denied the transfer "in retaliation for [his] prior USERRA [l]awsuit," *id.* ¶ 94, and that there was "close temporal proximity" between the events, *see* ECF No. 37 at 6.  But under very similar circumstances, in which a plaintiff claimed she engaged in protected

---

[4]  In Opposition to the initial motion to dismiss, *see* ECF No. 23 at 11, which was copy and pasted into the instant motion, *see* ECF No. 37 at 5, Veronko also tries to transform a hostile work environment claim into a retaliation claim, although the specific allegation was drafted unclearly.  *See* Compl. ¶ 90 ("Superiors at the SCPD created a hostile work environment for Veronko between June 7, 2018 and January 10, 2021 [*sic*] Veronko's past USERRA lawsuit."); *see also id.* ¶ 91 (same for DOL Complaint).  That vague allegation fails to state a claim for retaliation as a matter of law because it does not allege "a material loss of benefits or responsibilities that significantly alter[ed] the terms and conditions of [Veronko's] employment." *See Hansen v. City of New York*, No. 24-cv-2808, 2025 WL 588119, at *7 (S.D.N.Y. Feb. 24, 2025).  Defendant also suggests, as an alternative argument, that even the denied transfer request fails to constitute a materially adverse employment action.  *See* ECF No. 22-6 at 17.  The Court need not resolve that argument here, but observes that it would seem to have more purchase with respect to the claims related to denied overtime and tour changes, insofar as Veronko never alleges that those were benefits of employment that he "los[t]" because of his protected activity. *See Gross*, 636 F.3d at 892 (materially adverse actions include "termination, demotion accompanied by a loss of pay, or a material loss of benefits or responsibilities").

[5]  This is the most generous timing available for Veronko, given that his engagement in the protected activity (suing) necessarily preceded his settlement of that suit.  Indeed, in his reconsideration motion, he points to the prior suit, which was filed years earlier in 2016.  *See* ECF No. 37 at 6 (citing *Veronko v. Cnty. of Suffolk*, No. 16-cv-02490 (E.D.N.Y. filed May 16, 2016)).

9

activity and was fired roughly 18 months later, I dismissed a USERRA retaliation claim, noting that there appeared to be no authority "in the Second Circuit finding that a temporal gap as large as . . . 18 months . . . can support a finding of temporal proximity" so as to sustain such a claim. *See Crianza v. Holbrook Plastic Supply, Inc.*, No. 22-cv-07685, 2024 WL 216696, at *3 (E.D.N.Y. Jan. 19, 2024); *see also Hansen*, 2025 WL 588119, at *6 (collecting cases and explaining that the outer bound for a claim based on temporal proximity is "typically measured in months, not years").

Neither in his initial Opposition, *see* ECF No. 23 at 11, nor in his motion for reconsideration, *see* ECF No. 37 at 5–6, does Veronko provide any argument for the Court to depart from its temporal analysis in *Crianza*.[6]  And he does not articulate, nor can the Court decipher, other "indicia of retaliatory motive" capable of overcoming the temporal gap.  *See Hansen*, 2025 WL 588119, at *6.  The only allegation that comes arguably close is his claim that in the period between settling the prior lawsuit and his retirement, "[s]uperiors at the SCPD repeatedly told [him] . . . that [he] would never be transferred or promoted from Patrol Sergeant because of [his] past USERRA lawsuit." *Id.* ¶ 87.  But even taking that general allegation as true, it is unlinked to the specific transfer request at issue here.  As Judge Cogan has explained in dismissing a Title VII retaliation claim, a general allegation such as that "retaliation was coming from the highest echelons of the FDNY" is impermissibly conclusory under *Twombly* and *Iqbal*. *See Romero v. City of New York*, No. 16-cv-4157, 2016 WL 6155935, at *2, *7 (E.D.N.Y. Oct. 21, 2016).  And here, critically, Veronko never alleges that any of those unidentified "superiors" had anything to do with the denied transfer to Aviation.  *See González-Santiago v. Baxter*

---

[6] For example, Veronko never alleges, as one could imagine, that he had only specific windows to request the transfer to Aviation, so there is no principled reason to view that denied transfer request differently from a termination well after engagement in protected activity.

10

*Healthcare S.A.*, No. 16-cv-2929, 2021 WL 1208207, at *28 & nn.67–68 (D.P.R. Mar. 29, 2021) (collecting cases for the proposition that the "decisionmaker [needed to] ha[ve] knowledge of plaintiff's protected activity); *see also Blanco v. Brogan*, 620 F. Supp. 2d 546, 561 n.6 (S.D.N.Y. 2009) (same in the Title VII context).  This defect is similarly fatal to his other alleged adverse employment actions—namely that the "SCPD" writ large "intentionally[,] continuously[,] and repeatedly den[ied] his requests for overtime and tour changes in retaliation for his military service and USERRA complaints."  AC ¶ 98.  At bottom, Veronko alleges (1) that he engaged in protected activity; (2) he suffered adverse employment actions; and (3) he suffered those actions because he engaged in the protected activity.  As courts in this Circuit routinely hold in the Title VII context, that is a "false syllogism" which cannot withstand a motion to dismiss.  *See Romero*, 2016 WL 6155935, at *5.  So, too, here.

## CONCLUSION

For the reasons explained herein, Plaintiff Veronko's motion to reconsider the prior dismissal of Count IV, alleging retaliation under USERRA, is granted, but upon reconsideration, Defendant Suffolk County's motion to dismiss Count IV is also granted.  All of his claims having been dismissed, Veronko shall remain terminated from this action.  The schedule, as modified by the Court's prior dismissal Order, *see Bjelobrk*, 2025 WL 711791, at *16, remains in effect.

SO ORDERED.

                                                  */s/ Hector Gonzalez*
                                                     HECTOR GONZALEZ
                                                     United States District Judge

Dated: Brooklyn, New York
       April 8, 2025