UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MATTHEW D. BJELOBRK,

               Plaintiff,

     v.

SUFFOLK COUNTY et al.,

               Defendants.

**MEMORANDUM & ORDER**
23-CV-08811 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Matthew Bjelobrk, a former servicemember and police officer, alleges that he was discriminated against and retaliated against during his employment with the Suffolk County Police Department ("SCPD"), in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). *See* ECF No. 1 (Complaint).[1]  Following earlier motion to dismiss practice, the remaining issues are:  five claims for discrimination in violation of USERRA 38 U.S.C. §§ 4311(a) and 4318(b)(3)(B), and one claim for retaliation in violation of USERRA § 4311(b).  Defendant Suffolk County moves for summary judgment on all claims. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

Plaintiff is a former police officer who joined the Suffolk County Police Department ("SCPD") in 1994 and retired with the rank of sergeant in 2016.  From 1988 and throughout his career at the SCPD, Plaintiff also served in the U.S. Army Reserve.  In bringing this action,

---

[1]     Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations.  The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting to deposition transcripts, where the Court cites to the original page number on the native document.

Plaintiff claims that because of his military service:  (i) several of his applications to transfer to other units within the SCPD were denied; (ii) he was given less time than other police sergeants to study for a promotion exam; and (iii) his pension calculation excludes certain overtime that he would have earned but for his period of military service.  *See* ECF No. 1 (Complaint).  The following facts are drawn from the parties' Rule 56.1 statements and exhibits and construed in the light most favorable to the non-moving party, Plaintiff.  Unless otherwise noted, these facts are undisputed.

### A. COPE Unit Denial

At some point before the events at issue in this action, Plaintiff applied for and was transferred to SCPD's Aviation Section while continuing to serve in the Army Reserve.  *See* ECF No. 57-1 ¶ 12 (Plaintiff's Rule 56.1 Counterstatement).  Notwithstanding that transfer approval, Plaintiff alleges that, in 2005, after returning from military duty in Iraq, he was denied transfer to the Seventh Precinct Community Oriented Police Enforcement ("COPE") unit because of his military service.  *See* ECF No. 1 ¶¶ 38, 40.  COPE was responsible for enhancing public safety through comprehensive community engagement with local residents and organizations.  *See* ECF No. 57-1 ¶ 8.  Plaintiff claims that his interviewer, Lieutenant Brown, made discriminatory comments about Plaintiff's military service by asking how long Plaintiff had been in the Seventh Precinct, other than being deployed.  *See* ECF Nos. 56-11 and 57-6 at 166:7–167:8 (Transcript of Plaintiff's Deposition, "Dep. Tr.").  Plaintiff does not know Lieutenant Brown's first name, who else interviewed for the position, or who was ultimately assigned to the COPE Unit.  *See* ECF No. 57-1 ¶¶ 1, 6.

In December 2005, the only superior officer in SCPD with the last name "Brown" was Deputy Inspector Robert Brown.  *See id.* ¶ 2.  However, Deputy Inspector Robert Brown was not

serving in the Seventh Precinct when Plaintiff returned from deployment in December 2005, as he left the Seventh Precinct in March 2004. *See id.* ¶ 4. Nor was Deputy Inspector Robert Brown involved in any interviews or decision-making related to the Seventh Precinct COPE Unit in 2005 or the following year, 2006. *See id.* ¶ 5. Additionally, there is no record of Plaintiff applying for transfer to COPE in and around his return from deployment in December 2005. *Id.* ¶¶ 1, 7.

### B.    K-9 Sergeant Denial

In 2010, Plaintiff applied for, but did not obtain, a position as a K-9 Sergeant. *See id.* ¶ 13. As part of the application, Plaintiff was required to pass a physical test which involved running/walking a 1.5-mile cross-country course in 16 minutes or less. *See id.* ¶ 16. Plaintiff failed the physical test. *See id.* ¶ 17. Passing the physical test was mandatory for the K-9 Sergeant position. *Id.* ¶ 18. The applicant who was ultimately selected passed the physical fitness test. *Id.* ¶ 19.

### C.    Civil Service Exam

#### i.    October 2012 Exam (Taken August 2013)

Defendant administered a police lieutenants promotion examination ("Civil Service Exam") on October 20, 2012. *See id.* ¶ 21. At that time, Plaintiff was deployed overseas on an active-duty military tour that lasted from January 28, 2012, to April 2, 2013. *See id.* ¶ 20. On June 13, 2013, approximately two months after Plaintiff returned from his tour, Defendant's Personnel Analyst, Keith Murphy, advised Plaintiff that, to obtain an alternate test date, he should send a written request and documentation confirming that he was on active duty on the date of the Civil Service Exam. *See id.* ¶ 22.

One week later, on June 19, 2013, Murphy emailed Plaintiff to schedule the make-up exam. *See id.* ¶ 23. Murphy instructed Plaintiff that he would need him to take the exam before attending annual training in July. *See id.* When Plaintiff asked, "[a]ren't there any allowances for time to study?" Murphy informed him, "[t]he law allows sixty days after reinstatement for candidates to request a [m]ilitary [m]akeup [e]xam. Once the exam is requested we must schedule it as soon as possible." *Id.* ¶¶ 24–25. Plaintiff responded, "ok thx[.]" *Id.* ¶ 26.

On June 24, 2013, Murphy emailed Plaintiff, acknowledging receipt of Plaintiff's application, but explaining that it could not be processed because Plaintiff failed to include the completed fee-waiver form. *See id.* ¶ 27. Murphy attached another copy of the fee-waiver form, asked Plaintiff to provide his availability for the exam, and reminded Plaintiff that he must take the exam before attending annual training. *See id.* Plaintiff responded that he was having difficulty obtaining study materials for the portion of the exam concerning local rules and procedures, and that he could not take the exam until he obtained them. *See id.* ¶ 28.

Approximately one month later, on July 22, 2013, Murphy emailed Plaintiff again, this time to both his personal and work email addresses, with exam scheduling information. *See id.* ¶ 29; ECF No. 56-17 at 3–4 (Exam Scheduling Emails). Murphy offered the last three days of July as potential exam dates and wrote:

> You **<u>MUST</u>** appear . . . on one of the following dates for a military makeup for the above noted exam. . . . ALTERNATE TEST DATES ARE NOT AVAILABLE. If you fail to take the exam on one of the dates listed above for any reason you will not be rescheduled. . . . Please respond to this email **<u>as soon as possible</u>** to notify this office on which of the above dates you wish to take the exam.

ECF No. 56-17 at 3–4 (emphasis in original); *see also* ECF No. 57-1 ¶ 29. Plaintiff responded two weeks later, after all three exam dates had passed: "I got your email, unfortunately it was after the fact. I want to try and arrange a day this week to take the exam." ECF No. 57-1 ¶ 30. Notwithstanding Murphy's prior warning that "ALTERNATIVE TEST DATES ARE NOT

AVAILABLE," Defendant permitted Plaintiff to take the Civil Service Exam on August 9, 2013. *See id.* ¶¶ 31–32.

Out of 99 examinees, Plaintiff's score ranked 70th. *See id.* ¶ 34. His score was not competitive enough to get promoted. *Id.* ¶ 36. Plaintiff alleges that he received the study guide for the local rules and procedures portion of the exam with less time to study than the other candidates who had taken the exam, *see* ECF No. 1 ¶ 63, and "without justification," ECF No. 57-2 ¶¶ 27–28 (Plaintiff's Affidavit; "Aff."). However, prior to sitting for the exam, Plaintiff did not complain to Murphy that he did not receive study materials for the local rules and procedures portion of the exam. ECF No. 57-1 ¶ 33. Even if Plaintiff had scored perfectly on that portion of the Civil Service Exam, he would have still ranked behind 45 other candidates. *See id.* ¶¶ 35, 37.

### D.    *Firearms Training Section Denials*

On three occasions, Plaintiff applied for, but did not obtain, certain positions within the SCPD Firearms Training Section ("FTS").

### i.    2013 FTS Commanding Officer Application

On July 9, 2013, after FTS Commanding Officer ("CO") Stanley Hamilton retired, Sergeant Matthew O'Malley was elevated to the FTS CO position. *See id.* ¶ 53. O'Malley was a military service member who had been actively deployed to Afghanistan and was out on military leave from January 2011 to March 2012. *Id.* ¶ 50. After he returned from Afghanistan, O'Malley served in the Army Reserves until September 2015. *See id.* ¶ 51. While in the Army Reserve, he worked for the SCPD, continued to participate in all required military trainings, and was elevated to FTS Executive Officer ("EO") in October 2012 and FTS CO in July 2013. *See id.* ¶¶ 49, 51–52, 54.

Plaintiff applied for the FTS CO position, approximately three months later, on October 4, 2013. *See id.* ¶ 56. Because O'Malley was already the FTS CO, Plaintiff's application was deemed an application for FTS EO . *See id.* ¶ 59. O'Malley interviewed the FTS EO applicants, including Plaintiff, but ultimately another applicant, Sergeant Joseph M. Suarez, was selected. *See id.* ¶¶ 60–61. Suarez had been with the SCPD for 21 years, serving as a sergeant for seven of those years. *See id.* ¶ 58. He had formerly served as an instructional officer in the FTS and recruit training sections, held instructor credentials for various tactical and defensive tactics, was FBI-trained as an instructor in specialized firearms, developed tactical shooting drills for the SCPD, and was endorsed by his superiors as an "experienced, effective supervisor," and a "positive influence and role model for his subordinates." *See id.*

### ii.      2014 FTS Executive Officer Application

After O'Malley was transferred to a new position in August 2014, Suarez was elevated to FTS CO. *See id.* ¶ 62. Suarez interviewed Plaintiff for the FTS EO position in September 2014, but ultimately another applicant, Sergeant Steven Desantis, was selected. *See id.* ¶¶ 63, 66. Desantis had worked as a police officer since 1989 and joined SCPD in 1992. *See id.* ¶ 65. He had served in the Police Academy, instructing recruits and in-service personnel on firearms and other law enforcement topics, oversaw his precinct's COPE Unit and its enforcement and administration initiatives (including distributing and tracking grants), and received high praise from his CO. *See id.*

### iii.      2016 FTS Executive Officer Application

Plaintiff applied again for the FTS EO position in January 2016. Four applicants (including Plaintiff) were not interviewed, as they had all been interviewed less than 16 months

6

prior, in September 2014.  *See id.* ¶¶ 72–73.  Plaintiff concedes that the decision not to interview Plaintiff for this EO position had nothing to do with his military service.  *Id.* ¶ 74.

Another applicant, Sergeant Jason I. Ostrow, was ultimately selected.  *See id.* ¶ 71.  Ostrow was a certified instructor in topics like chemical munitions, less lethal weapons, and active shooter scenarios, and was a former AR-15 armorer who had completed police sniper school.  *See id.* ¶ 70.  He qualified quarterly with the U.S. Federal Air Marshal Service and continued special weapons training through the New York Tactical Officers Association, participated in outside-agency firearms training, and had recently trained with a U.S. Air Force Special Operations rescue squadron.  *See id.*

### E.    Plaintiff's Retirement

During Plaintiff's career with the SCPD, numerous members of the Army Reserves were promoted—including Plaintiff's promotion to Sergeant in 2007.  *See id.* ¶¶ 11, 77.

Plaintiff retired on July 31, 2016.  *See id.* ¶ 78.  In filling out his application for service retirement, dated June 29, 2016, Plaintiff wrote that his reason for retiring is "service retirement / discriminatory practices toward military service members."  *See id.* ¶ 79; ECF No. 56-32 (Service Retirement Application).  Also in 2016, Plaintiff filed a USERRA complaint with the U.S. Department of Labor.  *See* ECF No. 57-1 ¶ 81. The Department of Labor notified Defendant of Plaintiff's complaint on July 7, 2016.  *See id.* ¶ 82.  On November 22, 2016, the Department of Labor notified Defendant that it had completed its investigation and was closing its file without further action.  *Id.* ¶ 83.

F.     *Plaintiff's Pension*

i.     Defendant's Reporting Requirements

Defendant participates as an employer in the New York State and Local Police and Fire Retirement System ("PFRS"), which is managed and administered by the New York State Comptroller's Office ("Comptroller"). *See id.* ¶¶ 85–86.  State law requires Defendant to report comprehensive service and salary information to the Comptroller on a monthly basis, including, but not limited to, contribution payment information; number of days worked; and military leave. *Id.* ¶ 87.  Defendant complied with all monthly reporting requirements pertaining to Plaintiff's service and employment.  *Id.* ¶ 88.  Defendant reported all periods that Plaintiff was on military leave, including during the three years leading up to Plaintiff's retirement, and all the overtime he earned, including during the four years leading up to his retirement.  *See id.* ¶¶ 89–90. Defendant is unable to report hypothetical overtime or other unpaid earnings.  *Id.* ¶ 91.

ii.     Plaintiff's Military Service Credit

PFRS offers military service credit to past and present members of the military for up to three years of active military service.  *See id.* ¶¶ 92–93.  PFRS guidance states that, in addition to service credit for active military service, "there are other laws that allow the crediting of military service towards retirement benefits.  Once we receive your request for military service credit, we will determine which section is applicable and if you qualify."  *Id.* ¶ 100.  The Comptroller does not accept an employer's, like Defendant's, documents that an employee was on military leave. *See id.* ¶ 106.  To verify military service, an individual must provide official Department of Defense ("DOD") documentation.  *See id.* ¶¶ 94, 105.  The Comptroller has multiple means by which an individual can submit documents or information used in calculating their pension.  *See id.* ¶¶ 104, 123.

8

Before retiring, Plaintiff submitted three military service credit applications to the Comptroller.  In February 2011, he applied for military service credit for January 20, 2008 to February 5, 2010.  *See id.* ¶ 95.  Then, in December 2013, Plaintiff sought credit for the period of January 28, 2012 to April 2, 2013.  *See id.* ¶ 96.  Finally, in June 2014, Plaintiff applied for credit for the period of January 8, 2014 to June 15, 2014.  *See id.* ¶ 97.  With each request, Plaintiff attached a corresponding Certificate of Release or Discharge issued by the DOD ("DD214").  *See id.* ¶¶ 95–97.  Based on information provided by Plaintiff, and salary information provided by Defendant, the Comptroller granted Plaintiff military service credit for these periods.  *See id.* ¶¶ 98–99; *see also* ECF No. 56-42 (Comptroller's Letter).

iii.        Plaintiff's Pension Calculation

For an individual's pension, the employer provides salary and service information, and then the Comptroller calculates the pension amount based on the individual's final average salary ("FAS") in any consecutive 36-month period in which their wages were highest.  *See* ECF No. 57-1 ¶¶ 108, 111.  In calculating a service member's pension, the Comptroller "build[s] up" military time so that the individual's pensionable salary reflects what they would have earned, had they not been serving in the military.  *Id.* ¶ 101.  This built-up calculation includes annual base pay and lump sum recurring pay—including shift differential and holidays, overtime, and deferred overtime.  *Id.* ¶ 102.  To determine what overtime pay the servicemember would have earned, the Comptroller reviews the 12-month period preceding service.  *See id.* ¶ 103.

On June 16, 2016, Plaintiff submitted his pension application to the Comptroller.  *See id.* ¶ 107.  Approximately one month later, the Comptroller estimated Plaintiff's pension to be $9,393 per month based upon 29.30 years of service and a FAS of $172,100 (based on the August 2013 to July 2016 period).  *See id.* ¶¶ 109–110.  Approximately one year later, the

9

Comptroller completed its final calculation and set Plaintiff's gross monthly pension payment at $9,623.75 per month. *See id.* ¶ 113. Plaintiff alleges that the Comptroller's pension calculation is approximately $1,500 less per month than it would have been if Defendant had properly reported Plaintiff's FAS. *See* ECF No. 1 ¶ 71. Despite Plaintiff alleging that he attempted to do so several times, *see id.* ¶ 70, the Comptroller has no records of Plaintiff ever contacting it about any alleged pension deficiencies, ECF No. 57-1 ¶ 115.

After Defendant notified the Comptroller of the Complaint in this action, the Comptroller recalculated Plaintiff's compensation rate to correct a mistake. *See id.* ¶¶ 121–122. Based on this correction, the Comptroller credited Plaintiff with an additional two months of military leave, from January 2014 to March 2014. *See id.* ¶¶ 121–122.

### G.    *Procedural History*

Plaintiff and a co-plaintiff, Jay Veronko, commenced this action on November 30, 2023, against Defendants Suffolk County; the SCPD; and the Suffolk County Department of Human Resources, Personnel, and Civil Service ("Civil Service Department"). *See* ECF No. 1 (Complaint). Defendants moved to dismiss on May 7, 2024. *See* ECF No. 22 (Motion to Dismiss). On March 5, 2025, the Court granted the motion to dismiss Veronko's claims and terminated him from the action. *See Bjelobrk v. Suffolk Cnty.*, No. 23-cv-08811, 2025 WL 711791 at *16 (E.D.N.Y. Mar. 5, 2025). As to Plaintiff, the Court dismissed all his claims against SCPD and the Civil Service Department. *See id.* The Court also dismissed Plaintiff's claims accruing before his assignment to the Seventh Precinct in 2004 and claims based on allegations about his vacation days. *See id.*

On September 28, 2025, Defendant filed a pre-motion conference letter in advance of a proposed motion for summary judgment, *see* ECF No. 47 (Defendant's Pre-motion Letter), to

which Plaintiff responded, *see* ECF No. 53 (Plaintiff's Pre-motion Letter).  The summary

judgment motion was fully briefed on January 9, 2026.[2]

## **LEGAL STANDARD**

Summary judgment is appropriate where the movant meets his burden to show "that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A court should grant summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  *Anderson*, 477 U.S. at 247.  In determining whether summary judgment is

warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess

whether there are any factual issues to be tried, while resolving ambiguities and drawing

reasonable inferences against the moving party."  *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d

Cir. 1986).

"Where the moving party demonstrates the absence of a genuine issue of material fact,

the opposing party must come forward with specific evidence demonstrating the existence of a

genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  A

nonmoving party asserting that a fact is genuinely disputed must support the assertion by citing

materials in the record or showing that the materials cited do not establish the absence of a

---

[2]     The motion papers consist of:  ECF No. 56 (Defendant's Notice of Motion); ECF No. 56-57 (Defendant's Memorandum of Law); ECF No. 56-1 (Defendant's Rule 56.1 Statement); ECF No. 56-2–56-56 (Defendant's Exhibits); ECF No. 57 (Plaintiff's Opposition); ECF No. 57-1 (Plaintiff's Rule 56.1 Counterstatement); ECF No. 57-2 (Plaintiff's Affidavit, "Aff."); ECF No. 57-3–57-10 (Plaintiff's Exhibits); ECF Nos. 59, 61-1 (Defendant's Reply and Exhibits).

genuine dispute.  Fed. R. Civ. P. 56(c)(1).  To defeat summary judgment, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation."  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005); *see also Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir. 1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise").

A nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  "[T]he nonmovant cannot defeat a motion for summary judgment by relying on unsupported assertions, conjecture or surmise."  *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, 578 F. Supp. 3d 467, 486 (S.D.N.Y. 2022) (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)).  And "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252.  "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict[.]"  *Id.*

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *See LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  However, "when the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and dismiss the claim."  *Jeffreys*, 426 F.3d at 555 (citing *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998)).  And a party may not "create a material issue of fact by submitting affidavits disputing his own prior sworn testimony."  *Pico*, 994 F. Supp. at 470 (citing *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d

12

566, 572 (2d Cir. 1991)); *see also Crawford v. Franklin Credit Management Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (same).  "[C]ourts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 94 (S.D.N.Y. 2020).

While district courts are duty-bound not to weigh the credibility of the parties at the summary judgment stage, "in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any genuine issues of material fact, without making some assessment of the plaintiff's account." *Jeffreys*, 426 F.3d at 554.  "Under these circumstances, the moving party must still meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." *Id.*

## **DISCUSSION**

All of Plaintiff's remaining claims are brought under USERRA.  The Complaint makes six claims in two "counts."  Count I is comprised of five claims for discrimination in violation of 38 U.S.C. §§ 4311(a) and 4318(b)(3)(B).  Count II is a claim for retaliation in violation of § 4311(b).  *See* ECF No. 1 at 12–13.  Defendant moves for summary judgment on all counts, which the Court grants because no reasonable jury could return a verdict for Plaintiff on any of his claims.

### I.     **Initial Note on Plaintiff's Opposition**

As an initial matter, several aspects of Plaintiff's Opposition are at odds with well-established standards for a summary judgment motion.  The Court addresses these upfront.

13

First, Plaintiff attempts to minimize his burden at this stage by erroneously maintaining that he need only raise "questions of fact." Opp. at 5. However, not every factual dispute is enough to preclude summary judgment. The factual disputes must be material to the claims. *See, e.g., Quarles v. Gen. Motors Corp. (Motors Holding Div.)*, 758 F.2d 839, 840 (2d Cir. 1985) ("[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment."); *see also Anderson*, 477 U.S. at 247.

Second, Plaintiff argues that Defendant's affirmative defenses are relevant for trial, but not for summary judgment. *See* Opp. at 5, 12–13; *see also* ECF No. 53 at 3 (Plaintiff's Pre-Motion Letter). That, too, is incorrect. "Summary judgment is also appropriate in the absence of material facts disputing a defendant's entitlement to judgment as a matter of law on an affirmative defense." *Segen ex rel. KFx Inc. v. Westcliff Cap. Mgmt., LLC*, 299 F. Supp. 2d 262, 267 (S.D.N.Y. 2004).

Third, much of the evidence Plaintiff relies on is his own unsupported testimony and a self-serving affidavit that introduces new allegations. But "unsupported allegations do not create a material issue of fact." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). "A plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 379 (E.D.N.Y. 2013); *see also Gue v. Suleiman*, No. 10-cv-8958, 2012 WL 4473283, at *7 (S.D.N.Y. Sept. 27, 2012) ("[B]ald assertions without more are insufficient to overcome a motion for summary judgment. Summary judgment is therefore appropriate where the only evidence in the case are the conclusory allegations of the plaintiff.").

Fourth, Plaintiff's self-serving affidavit contains numerous allegations that are either: (i) improperly introduced in opposition to Defendant's motion, or (ii) inconsistent with his deposition testimony.  Yet, it is well-established that Plaintiff may not "create a material issue of fact by submitting affidavits disputing his own prior sworn testimony" to defeat Defendant's summary judgment motion.  *Pico*, 994 F. Supp. at 470 (citing *Trans-Orient Marine Corp.,* 925 F.2d at 572).  Nor may Plaintiff amend his Complaint by asserting new facts or theories for the first time in opposition to Defendants' motion.  *See Caro Cap., LLC v. Koch*, 653 F. Supp. 3d 108, 120 (S.D.N.Y. 2023) (collecting cases that "a party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment"); *Cheng v. Via Quadronno LLC*, No. 20-cv-8903, 2022 WL 17069800, at *6 (S.D.N.Y. Nov. 17, 2022) ("Plaintiff may not properly raise new allegations in his opposition to Defendants' motion for summary judgment.").  The Court therefore declines to consider such allegations.  *See, e.g., Lawson v. Homenuk*, 710 F. App'x 460, 464 (2d Cir. 2017) ("It is well settled in this circuit that such an affidavit should be disregarded.") (citing *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995)).

Fifth, Plaintiff's Opposition fails to address several of Defendant's arguments.  In doing so, Plaintiff effectively concedes those arguments.  *See, e.g., Nance v. N.Y. Pub. Interest Rsch. Grp. Fund, Inc.*, No. 23-cv-3030, 2025 WL 965883, at *6 (S.D.N.Y. Mar. 31, 2025) (collecting cases).

Finally, the Opposition attempts to introduce a new claim for "Constructive Termination," *see* Opp. at 13, which the Court rejects as improper.  "Constructive discharge is generally regarded as an aggravated case of hostile work environment."  *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 571 (S.D.N.Y. 2022).  When ruling on the motion to dismiss, the

15

Court explicitly noted that Plaintiff did not bring a hostile work environment claim. *See*

*Bjelobrk*, 2025 WL 711791, at \*16 ("[T]he Complaint contains no claim for hostile work

environment with respect to Bjelobrk," and "Bjelobrk advances no hostile work environment

claim[.]").  Accordingly, "because plaintiff has not stated a hostile work environment claim *a*

*fortiori* [he] has not stated a claim for constructive discharge." *Maron*, 605 F. Supp. 3d at 571.

Moreover, Defendant accurately points out that there is no claim for constructive termination or

discharge in the Complaint. *See* Reply at 11.  "Plaintiff is not permitted to assert a new claim in

opposition to a motion for summary judgment." *Hunt-Watts v. Nassau Health Care Corp.*, 43 F.

Supp. 3d 119, 135 (E.D.N.Y. 2014).

## II.       Discrimination Claims

Plaintiff claims that Defendant unlawfully discriminated against him on several

occasions, in violation of USERRA, 38 U.S.C. § 4311(a).  He alleges that, because of his active

military service:  (i) several of his applications to transfer to other units of the SCPD were

denied; (ii) he was given less time than other police sergeants to study for the Civil Service

Exam; and (iii) his pension calculation does not include overtime that he would have earned but

for his period of military service.

"The purpose of USERRA is to encourage military service by eliminating or minimizing

the disadvantages to civilian careers[.]" *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 174 (2d

Cir. 2011).  Most relevant here, USERRA protects members of the uniformed services, including

those who are in the military reserves, *see Mock v. City of Rome*, 910 F. Supp. 2d 429, 430–32

(N.D.N.Y. 2012), from discrimination based on their military service by providing that:

> [a] person who is a member of, . . . has performed, . . . or has an obligation to
> perform service in a uniformed service shall not be denied . . . retention in
> employment, promotion, or any benefit of employment by an employer on the basis
> of that membership, . . . performance of service, . . . or obligation.

38 U.S.C. § 4311(a). The statute defines "a benefit of employment" as "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." *Id.* § 4303(2). "[A] loss of a benefit of employment under § 4311(a) constitutes an adverse employment action, so long as the loss is material." *Woodard v. N.Y. Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 347 (E.D.N.Y. 2008), *remanded on other grounds*, 350 F. App'x 586 (2d Cir. 2009).

Courts in the Second Circuit apply a two-step burden shifting analysis to discrimination claims under USERRA. *See Kassel v. City of Middletown*, 272 F. Supp. 3d 516, 529–30 (S.D.N.Y. 2017) (collecting cases). At step one, the employee must show by a preponderance of evidence that his protected status was "a substantial or motivating factor in the adverse employment action." *Gummo v. Vill. of Depew*, 75 F.3d 98, 106 (2d Cir. 1996). "Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Lapaix v. City of New York*, No. 13-cv-07306, 2014 WL 3950905, at *5 (S.D.N.Y. Aug. 12, 2014). This may be proved through "direct or circumstantial evidence, including an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Id.* A motivating factor "is not necessarily the sole cause of the action, but rather it is one of the factors that a truthful employer would list if asked for the reasons for its decision." *Fink v. City of New York*, 129 F. Supp. 2d 511, 520 (E.D.N.Y. 2001). Moreover, "if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then

17

the employer is liable under USERRA." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (emphasis in original).

"Once the employee proves that his military status served as a motivating factor in the employer's adverse decision, the employer may nonetheless escape liability" at step two "by showing, as an affirmative defense, that it would have made the same decision without regard to the employee's protected status." *Woodard*, 554 F. Supp. 2d at 349.[3]

### A.      Denials of Transfers to the COPE, K-9, and FTS Units

For three of Plaintiff's discrimination claims, the Court grants summary judgment in favor of Defendant because a reasonable jury could not find that Plaintiff was denied a promotion or a material benefit of employment based on his military service.  Plaintiff alleges that, because of his military service, he was not selected for:  (i) the Seventh Precinct COPE Unit in 2005; (ii) the K-9 Sergeant position in 2010; and (iii) the FTS positions in 2013, 2014, and 2016. *See* ECF No. 1 ¶¶ 38–51.  Defendant moves for summary judgment on these claims, arguing, among other things, that none of these transfer denials constitute adverse actions. *See* Mot. at 9–10, 11, 15.

While a denial of a transfer may, in some circumstances, constitute an adverse employment action, courts "require a plaintiff to proffer objective indicia of material disadvantage; subjective, personal disappointment is not enough." *Beyer v. Cnty. of Nassau*, 524 F.3d 160, 164 (2d Cir. 2008); *see also, e.g., Cunningham v. Consol. Edison Inc.*, No. 03-cv-3522, 2006 WL 842914, at *18 (E.D.N.Y. Mar. 28, 2006) ("The denial of a request for a lateral transfer

---

[3]      Courts may entertain affirmative defenses at the summary judgment stage. *See, e.g., Lawson*, 710 F. App'x at 466.

is not an adverse employment action . . . even where [the] employee has a personal preference for the transfer[.]") (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123 (2d Cir. 2004).

Specifically, Defendant argues for dismissal of these three claims because:  (i) transfer to COPE was not an objectively superior job assignment; (ii) Plaintiff "does not even attempt to allege any benefits from transferring to the [K-9] unit"; and (iii) "there is no evidence in the record from which a rational juror could reasonably conclude" that the FTS positions would have involved objective and significant improvements in Plaintiff's employment conditions.  *See* Mot. at 9, 11, 15.  The Opposition fails to address these arguments, *see* Opp. at 9–13, therefore Plaintiff concedes them.  *See supra* Section I (citing *Nance*, 2025 WL 965883, at \*6).

Aside from failing to address Defendant's aforementioned arguments, Plaintiff also fails to point to any admissible evidence in the record upon which a rational jury could rely to reasonably conclude that he was denied a "benefit of employment," *see* § 4303(2), for any of these transfer denials.  For example, he points to no admissible evidence that the denials made him suffer any decrease in benefits, wages, or salary; reduction in job responsibilities; loss of prestige, rank, or opportunity for career advancement; or any other material change to the terms and conditions of his employment.  *See Clay v. Cnty. of Suffolk*, 404 F. Supp. 3d 737, 756 (E.D.N.Y. 2019) (citing *Beyer*, 524 F.3d at 164).[4]  Notably, he does not dispute that "Plaintiff

---

[4]    The Complaint alleges that assignment to the COPE Unit "was the first step toward assignment to the Precinct Crime Unit [] and thereafter promotion to detective," ECF No. 1 ¶ 36, and that the FTS CO position "had a long history of generous overtime opportunities," *id.* ¶ 47. Although these allegations, accepted as true at the time, were sufficient to survive a motion to dismiss, these bare allegations, without more, are insufficient at the summary judgment stage. "When the [summary judgment] motion is made, [courts] go beyond the paper allegations of the pleadings, which were enough to survive the common law demurrer.  The time has come . . . to put up or shut up." *Weinstock*, 224 F.3d at 41.  Additionally, the latter allegation is unsupported by Plaintiff's testimony acknowledging that he did not know whether there would have been more pay, hours, or overtime opportunities if he had transferred to the FTS unit.  *See* Dep. Tr.

would have received no direct financial benefit" by transferring into the FTS.  ECF No. 57-1 ¶ 75.

Although Plaintiff attaches to his Opposition an affidavit in which he states that he "would have realized an economic benefit" from an FTS assignment because "the positions offer a tremendous amount more of overtime than a patrol sergeant," Aff. ¶ 32, he fails to cite any evidence to corroborate that statement.  *See Alessi*, 578 F. Supp. 3d at 486 ("[T]he nonmovant cannot defeat a motion for summary judgment by relying on unsupported assertions, conjecture or surmise.").  And, significantly, this statement contradicts Plaintiff's deposition testimony.  *See* Dep. Tr. 354:4–23 (Q: ". . . Would it have been more pay?"  A: "I don't know.  I don't know what the hours were.  I don't know if they had an opportunity for overtime.  That I wasn't aware."); *see also* ECF No. 57-1 ¶ 75.  Plaintiff may not "create a material issue of fact by submitting affidavits disputing his own prior sworn testimony" to defeat Defendant's summary judgment motion, both of which are insufficient to defeat summary judgment.  *See supra* Section I (citing *Pico*, 994 F. Supp. at 470).

Accordingly, summary judgment is warranted on these claims because a reasonable jury could not find, for any of Plaintiff's transfer denials, that he was denied a promotion or material benefit of employment based on his military service.

Even if Plaintiff had shown that he was denied a benefit of employment, summary judgment is separately warranted on these claims because the evidence—even when construing ambiguities or reasonable inferences in the light most favorable to Plaintiff—does not support Plaintiff's claims that the transfer denials were based on his military service.  *See Anderson*, 477

---

354:4–23.  Accordingly, this allegation is too speculative to raise a genuine dispute of material fact.

U.S. at 252. "Even in the discrimination context, [] a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010); *see also Newsome v. IDB Cap. Corp.*, No. 13-cv-6576, 2016 WL 1254393, at \*17 (S.D.N.Y. Mar. 28, 2016) ("None of the circumstances to which he points supports an inference of discrimination because [the plaintiff] relies predominantly on his own unsupported testimony to give an invidious cast to neutral work place events."). Here, the only evidence Plaintiff relies on to oppose summary judgment on these claims is his own unsupported testimony and a self-serving affidavit that improperly introduces new allegations. *See supra* Section I.

### i.     COPE Unit Denial

Defendant argues there is no evidence that Plaintiff's military status was a "substantial or motivating factor" in denying his alleged application to transfer to the COPE Unit in 2005. *See* Mot. at 10. Defendant points to several undisputed facts, such as that: (i) there is no record of Plaintiff even applying for the transfer, *see* ECF No. 57-1 ¶ 7; (ii) Plaintiff has no recollection of who the other applicants were or who ultimately was selected for the assignment, *see id.* ¶ 6; and (iii) no one with the rank and name of Plaintiff's alleged interviewer was involved in any interviews or decision-making related to the Seventh Precinct COPE Unit in 2005 or 2006, *see id.* ¶¶ 1–5.

> Instead of addressing these undisputed facts head-on, Plaintiff's Opposition states:
>
> At his interview for COPE in 2012 [sic] Defendant asked Plaintiff questions about his military service and potential problems with his assignment to COPE if he served in the military. *Exhibit C, Bjelobrk Dep. P166, L12 thru* [sic] *P167, L4, and Decl. Bjelobrk P3, L18*. [Liutenant Donna] Engel made a derogatory comment about Plaintiff's COPE application and military service several months later. *Id @* [sic] *P3, L19*. A jury could find these comments to be discrimination based upon Plaintiff's military service.

Opp. at 9.  That is it.  That is Plaintiff's entire response to Defendant's motion for summary judgment on this claim.  He merely points to his own testimony that an unconfirmed interviewer, Lieutenant Brown, asked how long Plaintiff had been in the Seventh Precinct other than being deployed, and he improperly introduces a new allegation about a comment made by Lieutenant Engel.  *See id.* at 9.  Plaintiff's meager response relies entirely on his own self-serving statements and newly introduced allegations, both of which, as previously explained, are insufficient to survive summary judgment.  *See supra* Section I; *see also Alessi*, 578 F. Supp. 3d at 486 (nonmovant cannot defeat summary judgment by relying on unsupported assertions, conjecture or surmise).

At bottom, the undisputed facts significantly impede Plaintiff's ability to prevail on a claim that denial of his request to transfer to the COPE Unit was discriminatory.  Without any evidence that Plaintiff requested the transfer, any allegation that his request was denied because of discrimination is a non-starter.  Likewise, without any evidence that "Lieutenant Brown" interviewed him, a reasonable jury could not find for Plaintiff.  To defeat summary judgment, Plaintiff "must offer some hard evidence showing that [his] version of the events is not wholly fanciful."  *D'Amico*, 132 F.3d at 149.  Plaintiff fails to do so, therefore, summary judgment is further warranted on this claim.

ii.       K-9 Sergeant Denial

Similarly, there is no evidence that Plaintiff's military status affected his application to the K-9 Sergeant position in 2010.  Defendant argues that the record is "completely devoid of any evidence of anti-military animus," and that, because Plaintiff failed the mandatory physical fitness test, Defendant would have made the same decision to deny his application "irrespective of Plaintiff's military status."  *See* Mot. at 11–12.  Plaintiff's entire response to that is:

22

> At his physical fitness test for transfer to K-9 in 2010 the Lieutenant in charge asked Plaintiff if he was going to be deployed again. *Exhibit C, Bjelobrk Dep. P208, L20.* When Plaintiff pointed out that he was the only applicant who had just come from working a midnight tour the Lieutenant responded, in sum and substance, "Burke said you were a soldier; you'll be fine". *Dec. Bjelobrk, P 4, L21-24.* A jury could find that Defendant's demand that Plaintiff take the physical fitness test directly following a midnight tour of duty was an intentional attempt to interfere with his performance because he was in the military.

Opp. at 9. The problem with his response, however, is threefold.

First, Plaintiff unsuccessfully attempts to manufacture a material factual dispute by improperly introducing new allegations. He states that he went to the fitness test right after working a midnight tour, informed the Lieutenant administering the fitness test of this and asked if he could reschedule the exam, and the Lieutenant responded that Plaintiff would be fine taking the fitness exam without sleep since he was a soldier. *See id.*; Aff. ¶¶ 23–24. For reasons already explained, the Court declines to consider these new allegations. *See supra* Section I.

Second, Plaintiff cannot overcome the undisputed fact that he failed the mandatory physical fitness test, which the candidate who obtained the position passed. *See* ECF No. 57-1 ¶¶ 16–19. This fact is fatal to Plaintiff's discrimination claim because it indicates that he was not qualified for the K-9 Sergeant position. *See, e.g., Orlando v. Dep't of Transp., Comm'r*, 459 F. App'x 8, 9 (2d Cir. 2012) (no discrimination finding where plaintiff was not qualified for the position because he failed the test that was administered for the promotion). It also shows that Defendant "would have made the same decision without regard to [Plaintiff's] protected status." *Woodard*, 554 F. Supp. 2d at 349. Plaintiff attempts to bypass this factual obstacle by arguing that a jury could find that his having to take the test after an overnight police shift was "an intentional attempt to interfere with his performance because he was in the military," Opp. at 9. However, because there is no obvious nexus between working a midnight shift and military

23

service, his argument is far too speculative to survive summary judgment. *See Jeffreys*, 426 F.3d at 554 (Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation.").

Third, Plaintiff's self-serving testimony that the Lieutenant asked him, "Are you going to get deployed again?" is insufficient to defeat summary judgment. This allegation was "just enough to nudge his claim across the line from conceivable to plausible" at the motion to dismiss stage. *See Bjelobrk*, 2025 WL 711791, at *10. But at the time, Plaintiff had alleged that the interview began and ended with questions about his deployment obligations, and the Complaint omitted any mention of the mandatory physical fitness exam or that he failed it. Now, at the summary judgment stage, where Plaintiff's burden is higher, his evidence is weaker than when he barely survived the motion to dismiss. *See Warheit v. City of New York*, No. 02-cv-345, 2006 WL 2381871, at *12 (S.D.N.Y. Aug. 15, 2006) ("While mere allegations may be sufficient to withstand a motion to dismiss, at the summary judgment stage plaintiff has a higher burden."), *aff'd*, 271 F. App'x 123 (2d Cir. 2008). Thus, summary judgment is further warranted on this claim.

### iii.    FTS Denials

Finally, as to Plaintiff's claim that he was not selected for the FTS positions because of his military service, once again, there is no evidence that Plaintiff's military status affected his applications. Defendant argues that the undisputed facts undermine Plaintiff's allegation of anti-military animus given that Sergeant O'Malley, who was appointed to FTS EO and then elevated to FTS CO, was a military member who had recently returned from deployment in Afghanistan and continued to serve in the Army Reserves while employed by Defendant. *See* Mot. at 15. Defendant also argues that there is no dispute that the candidates who were ultimately chosen for the positions were highly-qualified, and that three other individuals—all non-military

24

members—who, like Plaintiff, interviewed in September 2014 and reapplied in 2016 were not given new interviews.  *See* ECF No. 57-1 ¶¶ 72–73.

In opposition, Plaintiff maintains that it was discriminatory for interviewers to ask if he was still in the military reserves.  *See* Opp. at 10–11.  But that question, without more, is insufficient for Plaintiff to show by a preponderance of the evidence that his military status was "a substantial or motivating factor in the adverse employment action."  *Gummo*, 75 F.3d at 106.[5] The only other record evidence to which Plaintiff points is his own unsubstantiated testimony that in 2012 when James Burke was appointed Chief of SCPD, *see* ECF No. 57-1 ¶ 76, after Plaintiff stood up and saluted him in congratulations Burke allegedly said, "Sergeant Bjelobrk, when will you ever learn?  You need to make a decision whether you are a soldier or a cop."  *See* Opp. at 10 (citing Dep. Tr.).  Plaintiff fails, however, to connect this statement, made approximately two to four years before his FTS applications, by someone not alleged to have had any involvement in decision-making concerning those applications, with the FTS transfer denials.

And, again, Plaintiff improperly introduces new, uncorroborated, and self-serving allegations that the Court declines to consider.  *See* Aff. ¶¶ 31, 33.  Specifically, Plaintiff says that "sometime after" his second FTS interview, Sergeant O'Malley "told [Plaintiff], in sum and

---

[5]     At the motion to dismiss stage, the Court noted that, if Plaintiff had alleged only that he was asked inappropriate questions about his military service schedule, that might not pass scrutiny on a motion to dismiss, but because Plaintiff also alleged that the interviewer asked about his "future mobilizations," he alleged enough to survive the motion to dismiss.  *See* *Bjelobrk*, 2025 WL 711791, at *11.  Now, at the summary judgment stage, Plaintiff fails to point to evidence to support that allegation.  At his deposition, Plaintiff was asked several times what other "inappropriate questions" were asked at his FTS interviews, but he testified that the only question was whether he was still in the reserves.  *See* Dep. Tr. at 277:4–7; 281:7–23.  When asked specifically about the Complaint's allegation that his interviewers asked about his "future mobilizations," Plaintiff testified that he could not "recall the specifics."  *Id.* at 281:17–23.

substance, that the higher-ups did not want two active reservists holding the two command positions in the FTS, so [Plaintiff] was not going to be considered as long as [Plaintiff] was in the reserves." Aff. ¶ 31. Plaintiff also says that "sometime between" the two FTS interviews, now-Chief Burke "approached [Plaintiff] and stated in sum and substance that [Plaintiff] was wasting everyone's time with [his] application [] as long as [Plaintiff] was a soldier and that anytime [Plaintiff] wanted to become a full-time cop, maybe [he] would get off patrol." *Id.* ¶ 33. Both of these allegations are improperly raised for the first time in opposition to Defendant's motion for summary judgment. *See supra* Section I (citing *Caro Cap.*, 653 F. Supp. 3d at 120). And at least one of them, the allegation about Sergeant O'Malley, is inconsistent with Plaintiff's testimony that he had never met O'Malley and that he did not know whether O'Malley was a veteran or reservist or "anything about him personally," Dep. Tr. 272:5–273:2, 296:10–14. *See Pico*, 994 F. Supp. at 470 (Plaintiff may not create a material issue of fact by submitting an affidavit that disputes his own prior sworn testimony).[6] Accordingly, summary judgment is further warranted on this claim.

### B. Civil Service Exam

Plaintiff alleges that Defendant gave him less time than the other police sergeants to study for the Civil Service Exam by delaying delivery of a study guide for the local rules and procedures portion of the exam. *See* ECF No. 1 ¶ 63; Aff. ¶¶ 27–28. In moving for summary judgment on this claim, Defendant argues that no reasonable jury could find that Plaintiff was

---

[6]     Because this newly introduced allegation is inconsistent with Plaintiff's testimony, the Court need not reach Defendant's argument that the allegation is also inadmissible hearsay. *See* Reply at 5.

discriminated against because, *inter alia*, Plaintiff was given all the time to prepare for the exam that he requested. *See* Mot. at 13–14.[7]

Plaintiff's Opposition argues that Defendant "scheduled his test just ten days after he had received the study guide for the Police Department specific questions," and "withheld this material without any justification as the other applicants had several months with those materials." Opp. at 10. However, Plaintiff does not point to any specific evidence that supports his arguments. Nor does he address the undisputed facts that Defendant accommodated Plaintiff's scheduling delays, *see* ECF No. 57-1 ¶¶ 22–32, or that Plaintiff did not complain to Murphy that he did not receive the study guide and/or request more time to study, *see id.* ¶ 33.

Because Plaintiff does not demonstrate any link between his military status and Defendant's alleged actions, a reasonable jury could not find that Plaintiff's military status was a "substantial or motivating factor" in the purported delay. *See Gummo*, 75 F.3d at 106. Consequently, Plaintiff's argument that "[a] jury could find that the withholding of the materials was discrimination" is too speculative to defeat summary judgment. *See Jeffreys*, 426 F.3d at 554 (Plaintiff "may not rely on conclusory allegations or unsubstantiated speculation.").

### C.    *Pension Reporting*

Plaintiff alleges that Defendant discriminated against him by failing to properly report his top consecutive thirty-six-month earnings to the Comptroller in accordance with § 4318(b)(3)(B)

---

7    Defendant argues in the alternative that, even if delayed delivery of the local rules and procedures study guide violated USERRA, Plaintiff's discrimination claim fails because he was not adversely affected. *See* Mot. at 13–14. The local rules and procedures portion of the exam was only worth four points and even if Plaintiff had scored perfectly on that portion of the exam, he would have still ranked behind 45 other candidates. *See id.* Because there is no evidence that Defendant's delayed delivery of the study guide violated USERAA, the Court does not reach Defendant's alternative argument.

of USERRA.  *See* ECF No. 1 ¶¶ 65–72, 115.  As a result, according to Plaintiff, the compensation rate used for the Comptroller's calculation did not include overtime that Plaintiff would have earned but for his period of military service.  *See id.* ¶ 71.  In moving for summary judgment, Defendant argues, among other things, that the record demonstrates that Defendant "reported comprehensive salary and service information to [the Comptroller], including all of plaintiff's overtime earned, and all periods of military leave, on a monthly basis in accordance with [the Comptroller's] regulations and requirements."  Mot. at 21.

It is undisputed that the Comptroller is responsible for calculating the pension amount and that Defendant complied with all of the Comptroller's monthly reporting requirements regarding Plaintiff's service and employment, and reported all periods that Plaintiff was on military leave and all overtime he earned.  *See* ECF No. 57-1 ¶¶ 85–90.  It is also undisputed that, after the Complaint in this action was filed, the Comptroller recalculated Plaintiff's compensation rate to correct a mistake the Comptroller found that it had made.  *See id.* ¶¶ 121–122.  Based on this correction, the Comptroller credited Plaintiff with an additional two months of military leave, from January 2014 to March 2014.  *See id.*

Nonetheless, Plaintiff still seeks military service credit for unspecified dates in 2015 and 2016, which the Comptroller will not credit without certified military documentation verifying the dates.  Any other documentation, such as payroll records kept by Defendant or handwritten calendars kept by Plaintiff, are insufficient for verification.  *See id.* ¶¶ 105–106.  Plaintiff does not challenge the Comptroller's requirement for certified military documentation.  And indeed, to obtain pension credit for his pre-2015 military service dates, Plaintiff submitted DD214 forms to the Comptroller.  *See id.* ¶¶ 94–99.  But Plaintiff maintains that for his 2015 and 2016 dates, USERRA requires Defendant to provide the Comptroller with certified military documentation

28

on Plaintiff's behalf.[8]  In conclusory fashion, he argues that Defendant has "disregard[ed its] responsibility to, at a minimum, assist [Plaintiff] in exercising his USERRA pension rights," and that "a reasonable jury could conclude that Defendant could have made efforts to communicate with the Comptroller in order to ensure compliance with USERRA."  Opp. at 15–16.

Defendant counters that this claim should be dismissed because "USERRA only requires Defendant to make contributions to Plaintiff's pension as determined by [the Comptroller]; nothing in it additionally requires Defendant to 'pass on' underlying (unidentified) military documentation or ensure that the pension plan's calculation was correct."  Reply at 10. Defendant also argues that "Plaintiff cannot hold Defendant liable for his own, or [the Comptroller's], oversight, by espousing a liberal construction of USERRA that is not supported by its provisions."  *Id.*

The Court agrees with Defendant.  Plaintiff asks for more than what a plain reading of the statute requires, without citing any authority to support his expansive interpretation.[9]  Nor does he point to any evidence that Defendant even has access to, or could somehow obtain, such certified documentation from the military.  Accordingly, summary judgment is warranted on this claim.

*          *          *

---

[8]    It is unclear why Plaintiff has not provided the Comptroller with the requisite certified military documentation for his 2015 and 2016 service dates, if he did so for pre-2015 credit.  Nor is it clear how Plaintiff expects Defendant to procure the required military certifications.

[9]    38 U.S.C. § 4318(b)(3)(B) requires that an employee's compensation during military service periods be computed "on the basis of the employee's average rate of compensation during the 12-month period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)."

In short, Defendant has met its burden of establishing that there are no genuine issues of material fact and that based on the undisputed evidence, Defendant is entitled to judgment as a matter of law on each of Plaintiff's discrimination claims.[10]

### III.   Retaliation Claims

Plaintiff alleges that Defendant unlawfully retaliated against him, in violation of 38 U.S.C. § 4311(b).  In addition to prohibiting acts of discrimination, USERRA bars an employer from "tak[ing] any adverse employment action or other retaliatory action against any person because such person . . . has taken an action to enforce a protection afforded any person under this chapter."  38 U.S.C. § 4311(b).

To make out a *prima facie* case of retaliation under USERRA, "a plaintiff must show that (1) he was engaged in protected activity; (2) that the employer was aware of that activity; (3) that the plaintiff suffered an adverse employment action; and (4) that there was a causal connection between the protected activity and the adverse action." *Kassel*, 272 F. Supp. 3d at 537. Specifically, a servicemember claiming retaliation under Section 4311(b) must show that he suffered a "materially adverse" employment action "such as termination, demotion accompanied by a loss of pay, or a material loss of benefits or responsibilities that significantly alters the terms [or] conditions of his employment."  *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 892 (7th Cir. 2011); *see Croft v. Vill. of Newark*, 35 F. Supp. 3d 359, 370 (W.D.N.Y. 2014).  He also "must demonstrate that [his] exercise of [his] USERRA rights was a motivating factor in [the defendant's] action, unless [the defendant] can prove that the action would have been taken in

---

10      Given this holding, the Court need not reach Defendant's other arguments in support of summary judgment, such as Defendant's argument that the Complaint is barred by laches. *See* Mot. at 6.

the absence of [the plaintiff's] USERRA complaints." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 309 (4th Cir. 2006); *see also Lisdahl v. Mayo Found.*, 633 F.3d 712, 720 (8th Cir. 2011) (same); *Croft*, 35 F. Supp. 3d at 377–78 (same).

As the Court observed at the motion to dismiss stage, the Complaint "does not clearly allege what conduct constituted actionable retaliation." *See Bjelobrk*, 2025 WL 711791, at *11. The same issue persists today. Even after full briefing on the instant motion, Plaintiff does not make apparent: (1) what protected activity he engaged in; (2) whether Defendant was aware of that activity; (3) what adverse employment action he suffered; or (4) how there is a causal connection between the protected activity and the adverse action. *See Kassel*, 272 F. Supp. 3d at 537. Defendant tackles much of the guesswork and argues that this claim must be dismissed because Plaintiff cannot meet the causal connection element, as the first complaints Plaintiff made to a superior about military discrimination or retaliation occurred in mid-2016, and all acts Plaintiff complains of predate that. *See* Mot. at 18–20. The Court takes each element in turn, but ultimately agrees with Defendant.

To prevail on a retaliation claim, Plaintiff must show that he engaged in protected activity. *See Kassel*, 272 F. Supp. 3d at 537. Even when facing a summary judgment motion Plaintiff does not explain—much less point to any evidence of—what USSERA-related protected activity he engaged in. He only vaguely argues that he "assert[ed] his rights under USERRA." Opp at 13.

Next, Plaintiff must show that the employer was aware of Plaintiff's protected activity. *See Kassel*, 272 F. Supp. 3d at 537. Defendant contends that the first and only time Plaintiff complained to any superiors that he had experienced discrimination or retaliation for his military service was when he submitted his retirement application in June 2016, and that Defendant

31

learned from the Department of Labor about Plaintiff's USERRA complaint in July 2016.  *See* Mot. at 19.  In purporting to dispute this contention, Plaintiff only cites his own testimony that he "does not recall" whether he made any complaints before June 2016.  *See* ECF No. 57-1 ¶ 80. That is insufficient to raise a genuine dispute of material fact.  *See, e.g., CSI Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 414 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 56 (2d Cir. 2009) (party's failure to remember is not sufficient to create a genuine issue of material fact for purposes of summary judgment).  The Court thus considers it undisputed that the earliest Defendant became aware of Plaintiff's protected activity was June 2016.

As for the adverse employment action suffered, Plaintiff recycles the adverse employment actions alleged in his discrimination claim:  Defendant's delayed delivery of the local rules and procedures study guide, and the denial of Plaintiff's requests to transfer to the COPE, K-9, and FTS units.  *See* Opp. at 13 (relying on "[e]ach and every allegation of discrimination Plaintiff alleged since 2004").[11]  The Court will assume, only for the present argument's sake, that these constituted materially adverse changes in Plaintiff's working conditions.[12]  To the extent Plaintiff also relies on alleged statements made to him in the 1990s,

---

[11]  The Court excludes Plaintiff's pension-related allegation from this list because nothing in the Complaint or any of the parties' briefs connects Plaintiff's pension-related allegations to his retaliation claim.  The Complaint notably includes the relevant pension statute, § 4318(b)(3)(B), with Plaintiff's discrimination claim, but not with his retaliation claim.  *See* ECF No. 1 at 12–13.

[12]  Because USERRA does not define the term "adverse employment action," courts must look to commonly accepted definitions for guidance.  *See O'Connell v. Town of Bedford*, No. 21-cv-170, 2022 WL 4134466, at *11 (S.D.N.Y. Sept. 12, 2022) (*citing Beck v. Prupis*, 529 U.S. 494, 500–01 (2000)).  As other courts have noted, "the phrase 'adverse employment action' is a term of art within employment discrimination law."  *Id.*  In that context, an "adverse employment action" is a "materially adverse change" in the terms and conditions of employment."  *Sanders v. New York City Human Resources Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  A materially adverse change in working conditions "must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Raspardo v. Carlone*, 770 F.3d 97, 126 (2d Cir. 2014).

*see* Opp. at 8, the Court declines to consider them because any claims accruing before Plaintiff's assignment to the Seventh Precinct in 2004 have already been dismissed as time barred. *See Bjelobrk*, 2025 WL 711791, at *8. Relatedly, the Court also declines to consider any newly introduced allegations, *see supra* Section I, like Plaintiff's vague and unsupported allegation that he complained "directly to Howe, Engel, and Burke simultaneously with their comments to [him]." Aff. ¶ 34.[13]

Lastly, Plaintiff still does not explain—much less point to any evidence of—any causal connection between the alleged protected activity (his June 2016 letter and/or complaint) and the adverse actions (which all occurred before the protected activity). *See Kassel*, 272 F. Supp. 3d at 537. He merely argues that unspecified comments made by his superiors "constituted a direct threat of future discrimination as punishment for [Plaintiff's] assertion of his rights under USERRA," Opp. at 13, without pointing to any evidence that these same superiors were aware of his protected activity. Most importantly, it is well-settled that "an adverse employment action that precedes the protected activity cannot support a retaliation claim." *Glover v. Grimaldi*, No. 23-cv-5019, 2025 WL 919930, at *13 (S.D.N.Y. Mar. 26, 2025) (collecting cases).

---

"Examples of actionable adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less important title, a loss of important benefits, or significantly reduced responsibilities." *Id.*

[13]    "Howe" refers to Inspector Jack Howe, a Third Precinct commander who allegedly made comments to Plaintiff in 1995. *See* Opp. at 8; Aff. ¶ 7–8.

In short, none of Plaintiff's retaliation claims survive Defendant's motion for summary judgment because a rational jury could not reasonably find by a preponderance of the evidence for Plaintiff.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED in its entirety. *See* ECF No. 56. The Clerk of Court is respectfully directed to enter judgment consistent with this Order and close the case.

SO ORDERED.

/s/ Hector Gonzalez
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
May 7, 2026